No. 24-40599

# In the United States Court of Appeals for the Fifth Circuit

DARYL L. DAVIS,

*Plaintiff – Appellant*,

v.

DON WARREN, *Mayor*; SHIRLEY MCKELLAR, *Council Member*; DEBORAH PULLUM, *City Attorney*; JIMMY TOLAR, *Police Chief, City of Tyler*; JAMES GOODMAN, *Police Officer*; TIMOTHY HUTSON, *Police Officer*; GARRETT MARTIN, *Police Officer*; BLAKE KELLY, *Police Officer*; KRIS DAVIS, *Detective*; LARRY SMITH, *Sheriff*; NEAL FRANKLIN, *County Judge*; JACOB PUTMAN, *District Attorney*; RALPH CARAWAY, SR., *Commissioner Precinct 4*; JOANN HAMPTON, *Former Commissioner Precinct 4*; E. B. JOHNSON, *Police Supervisor*; J. RACKLIFF, *Police Supervisor*,

*Defendants – Appellees*.

On Appeal from the United States District Court
for the Eastern District of Texas, Tyler Division,
Case No. 6:24-CV-207-JCB-JDL

### SUPPLEMENTAL APPELLANT'S BRIEF OF DARYL L. DAVIS

Alec F. Mouser
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  22306
Telephone: (202) 777-9334
Facsimile:  (202) 530-9655

Allyson N. Ho
Elizabeth A. Kiernan
   *Counsel of Record*
Arjun Ogale
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
Telephone: (214) 698-3100
Facsimile:  (214) 571-2934
*ekiernan@gibsondunn.com*

COUNSEL FOR APPELLANT DARYL L. DAVIS

## CERTIFICATE OF INTERESTED PERSONS

No. 24-40599,
*Davis v. Warren et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiff–Appellant | Counsel for Plaintiff–Appellant |
| --- | --- |
| Daryl L. Davis | Allyson N. Ho<br>Elizabeth A. Kiernan<br>Arjun Ogale<br>GIBSON, DUNN & CRUTCHER LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas  75201<br><br>Alec F. Mouser<br>GIBSON, DUNN & CRUTCHER LLP<br>1700 M Street, N.W.<br>Washington, D.C.  22306 |
| **Defendants–Appellees** | **Counsel for Defendants–Appellees** |
| Don Warren, *Mayor*<br>Shirley McKellar, *Council Member*<br>Deborah Pullum, *City Attorney*<br>Jimmy Tolar, *Police Chief, City of Tyler*<br>James Goodman, *Police Officer*<br>Timothy Hutson, *Police Officer* | Michael Keith Dollahite<br>M. KEITH DOLLAHITE, P.C.<br>5457 Donnybrook Avenue<br>Tyler, Texas  75703 |

## CERTIFICATE OF INTERESTED PERSONS
(continued)

| | |
|---|---|
| Garrett Martin, *Police Officer* | |
| Blake Kelly, *Police Officer* | |
| Kris Davis, *Detective* | |
| E.B. Johnson, *Police Supervisor* | |
| J. Rackliff, *Police Supervisor* | |
| Larry Smith, *Sheriff* | N/A (No Appearance Filed) |
| Neal Franklin, *County Judge* | |
| Jacob Putman, *District Attorney* | |
| Ralph Caraway, Sr., *Commissioner Precinct 4* | |
| JoAnn Hampton, *Former Commissioner Precinct 4* | |

Respectfully submitted,

 /s/ *Elizabeth A. Kiernan*
Elizabeth A. Kiernan

*Counsel of Record for Appellant Daryl L. Davis*

ii

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Davis respectfully requests oral argument. This case presents important questions of civil-rights law that this Court considered significant enough to warrant appointing counsel to brief the case.

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ............................................................... i

Statement Regarding Oral Argument .......................................................iii

Table of Authorities .................................................................................. v

Introduction ............................................................................................. 1

Jurisdictional Statement........................................................................... 4

Issues Presented ....................................................................................... 5

Statement of the Case .............................................................................. 6

    I.    Mr. Davis is charged with, but never convicted of, felony evidence tampering. ............................................................... 6

    II.    The district court dismisses all claims as time barred........ 11

Summary of the Argument ..................................................................... 15

Standard of Review ................................................................................ 17

Argument ............................................................................................... 18

    I.    Mr. Davis timely sued for constitutional violations related to his felony evidence-tampering charge. ................ 18

    II.    This Court should reverse the dismissal with prejudice of Mr. Davis's other claims against city and county officials.......................................................................... 23

Conclusion.............................................................................................. 27

Certificate of Service ............................................................................. 28

Certificate of Compliance ...................................................................... 29

## TABLE OF AUTHORITIES

<u>Page(s)</u>

### Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................... 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................... 17

*Brandley v. Keeshan*,
  64 F.3d 196 (5th Cir. 1995) ....................................................... 21

*Chiaverini v. City of Napoleon*,
  602 U.S. 556 (2024) ........................................ 1, 2, 16, 18, 22

*In re Deepwater Horizon*,
  934 F.3d 434 (5th Cir. 2019) ....................................................... 9

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ..................................................................... 17

*Gervin v. Florence*,
  139 F.4th 1236 (11th Cir. 2025) ................................................ 23

*Harris v. Hegmann*,
  198 F.3d 153 (5th Cir. 1999) ..................................................... 17

*Heck v. Humphrey*,
  512 U.S. 477 (1994) ................................................................... 20

*Hernandez v. W. Tex. Treasures Est. Sales, L.L.C.*,
  79 F.4th 464 (5th Cir. 2023) ..................................................... 17

*Hitt v. City of Pasadena*,
  561 F.2d 606 (5th Cir. 1977) ................................................ 3, 16, 23

*Jones v. Adm'rs of Tulane Educ. Fund*,
  51 F.4th 101 (5th Cir. 2022) ....................................................... 9

*Laskar v. Hurd*,
  972 F.3d 1278 (11th Cir. 2020) ................................................. 23

*Lowrey v. Collin Cnty. Sheriff's Dep't*,
  15 F.3d 1078, 1994 WL 35601 (5th Cir. 1994) ......................... 25

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Manuel v. City of Joliet*,
580 U.S. 357 (2017) ............................................................................ 18, 19

*McDonough v. Smith*,
588 U.S. 109 (2019) ............................................... 1, 15, 18, 19, 20

*Morgan v. Chapman*,
969 F.3d 238 (5th Cir. 2020) .................................................................. 19

*Olstad v. Collier*,
205 F. App'x 308 (5th Cir. 2006) ......................................................... 26

*Pete v. Metcalfe*,
8 F.3d 214 (5th Cir. 1993) ...................................................................... 22

*Ricks v. Khan*,
135 F.4th 296 (5th Cir. 2025) ................................. 3, 16, 17, 23, 24, 26

*Spone v. Reiss*,
2025 WL 670968 (3d Cir. Mar. 3, 2025) ...................................... 22, 23

*State v. Davis*,
No. 114-0978-21 (Tex. Dist. Ct., Smith Cnty.) .......................... 9, 10, 11

*State v. Davis*,
No. 241-1366-19 (Tex. Dist. Ct., Smith Cnty.) .................................... 9

*Thompson v. Clark*,
596 U.S. 36 (2022) ............................................................... 1, 18, 21

*Wallace v. Kato*,
549 U.S. 384 (2007) ............................................................... 13, 20, 21

*Winfrey v. Rogers*,
901 F.3d 483 (5th Cir. 2018) ............................................................ 18

### Statutes & Rules

28 U.S.C. § 1291 .................................................................................... 4

28 U.S.C. § 1331 .................................................................................... 4

28 U.S.C. § 1915 ....................................................... 12, 13, 14, 17

**TABLE OF AUTHORITIES**
(continued)

Page(s)

42 U.S.C. § 1983.................................................................. 4, 11, 22

Fed. R. App. P. 4 ......................................................................... 4

Fed. R. Evid. 201......................................................................... 9

Tex. Penal Code § 12.34 ........................................................... 10

Tex. Penal Code § 37.09 ......................................................... 9, 10

Tex. Penal Code § 38.15 ........................................................... 10

**Other Authorities**

Eric Dexheimer,
  *Police Searching His Car for Drugs Found Nothing. He
  Could Still End Up In Prison for a Decade*,
  Houston Chronicle, Apr. 19, 2023 ........................................ 25

**INTRODUCTION**

For almost five years, officials in Tyler, Texas prosecuted Mr. Daryl L. Davis for felony evidence tampering.  Over those years, that charge hung over Mr. Davis's head, subjected him to regular searches, and restricted his liberty.  That baseless felony charge was ultimately dismissed.

Twenty-eight days later, Mr. Davis sought recompense for that unfounded prosecution.  But though Mr. Davis brought suit less than a month after dismissal—well within the two-year statute of limitations— the district court dismissed his complaint as time barred.  That was error.

When a person is formally charged with a crime, claims seeking redress for constitutional violations related to the initiation or prosecution of that charge don't accrue until the charge is favorably terminated—and only then does the statute of limitations begin to run.  *See McDonough v. Smith*, 588 U.S. 109, 116–17 (2019).  A charge terminates in a person's favor any time it ends without conviction, *Thompson v. Clark*, 596 U.S. 36, 48–49 (2022), and courts must evaluate the resolution of the charge underlying the constitutional claim *independent* of any other charge, *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562–64 (2024).  That is,

1

conviction on one charge doesn't insulate violations related to a different, baseless charge. *See id.*

Those principles dictate the result here. Mr. Davis sued Tyler officials for constitutional violations related to a baseless charge of felony evidence tampering that was rightly abandoned. And by bringing suit within a month of when that charge was dropped, Mr. Davis easily satisfied the applicable two-year limitations period.

The district court reached a contrary conclusion only by improperly applying the accrual rules for constitutional violations like false arrest, that occur *before* the initiation of legal process. It then compounded its error by overlooking the dismissal of the felony charge and focusing its analysis on Mr. Davis's *nolo contendere* plea to a *different* misdemeanor charge—a charge that doesn't underlie Mr. Davis's claims here. *See* ROA.66–68. Instead, the district court should have concluded that Mr. Davis's claims for constitutional violations related to the abandoned felony evidence-tampering charge were timely.

The district court further erred by dismissing *with prejudice* Mr. Davis's claims that various city and county officials ignored the ongoing violations of Mr. Davis's constitutional rights. Pro se pleadings must be

liberally construed and amendment freely allowed. *Ricks v. Khan*, 135 F.4th 296, 300–02 (5th Cir. 2025); *see also Hitt v. City of Pasadena*, 561 F.2d 606, 608–09 (5th Cir. 1977). Mr. Davis alleged sufficient facts to support that the officials knew of and ignored those ongoing constitutional violations. But even if he didn't, Mr. Davis should be allowed the opportunity to replead his claims with the benefit of counsel.

Mr. Davis respectfully asks this Court to vacate the district court's judgment and remand for further proceedings.

## JURISDICTIONAL STATEMENT

The district court had federal-question jurisdiction under 28 U.S.C. § 1331 because Mr. Davis's claims arise under 42 U.S.C. § 1983. The district court entered a final judgment dismissing Mr. Davis's claims on August 21, 2024. ROA.70. Mr. Davis timely appealed. ROA.72; Fed. R. App. P. 4(a)(1). This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

**1.** Whether the district court erred in dismissing as time barred Mr. Davis's claims for constitutional violations related to the charge of felony evidence tampering when he sued within a month of that charge's dismissal.

**2.** Whether the district court improperly dismissed *with prejudice* Mr. Davis's claims against city and county officials who ignored those ongoing constitutional violations.

STATEMENT OF THE CASE

**I.   Mr. Davis is charged with, but never convicted of, felony evidence tampering.**

On the evening of February 7, 2019, officers of the Tyler Police Department pulled Mr. Daryl L. Davis over.  ROA.9–10.  Officer James Goodman initially told Mr. Davis that he had failed to stop at a stop sign.  ROA.9.  Mr. Davis later learned, however, that this was mere pretext— the stop was a pre-planned drug sting.  ROA.13–14.

Mr. Davis complied with the officers' directions, provided his license, and permitted his car to be searched.  *See* ROA.9, 42.  Although he didn't resist, the officers accused Mr. Davis of "eating crack cocaine," "chok[ed]" him, and "slamm[ed]" him "on their patrol car."  ROA.9.  And despite claiming that Mr. Davis had eaten an entire bag of crack cocaine, the officers didn't initially take Mr. Davis to the hospital or even test him for drugs.  *See* ROA.9–14.  Instead, they took him to jail.  ROA.9–14.

Even when the officers finally transported him to a hospital later that night, they still didn't test him for drugs.  ROA.13.  Indeed, after holding Mr. Davis for several hours at the hospital without any medical treatment, the officers took Mr. Davis back to jail.  ROA.13.  Mr. Davis posted bond the following morning.  ROA.13.  Later that day, as a

6

condition of his release, the probation department conducted a urinalysis—a drug test—which came back *negative* for any drugs. ROA.13, 59.    Three days later, Councilmember Shirley McKellar accompanied Mr. Davis to another urinalysis, which again came back negative. *See* ROA.13, 59.[1]

Upon release, Mr. Davis began pleading his case with other city and county officials. ROA.13. Between February 2019 and May 2024, he met multiple times with the mayor, the chief of police, the arresting officers' supervisors, the local sheriff, a county judge, his local city councilmember, and two city commissioners. ROA.8–13, 59. At these meetings, Mr. Davis explained what happened—that he had been pulled over for allegedly failing to stop at a stop sign, accused of eating crack cocaine, beaten, taken to jail (where he wasn't tested for drugs), taken to the hospital (where he was neither tested nor treated for drugs), and tested upon release from jail (with a negative result). ROA.8–15. Mr. Davis also explained his view that his arrest (and later prosecution) fit

---

[1] In the five years these proceedings pended, Mr. Davis consistently tested negative for any drugs. ROA.59; *see also infra* p. 9–10 & n.3 (explaining that a condition of Mr. Davis's release post-indictment was weekly, then biweekly, and later monthly drug tests through May 2024).

7

into a broader pattern of racial profiling that had plagued his community for some time.  ROA.8–15.

No one took action.  ROA.8–15.  The mayor "turned a blind eye." ROA.8.  The sheriff conceded there shouldn't have been a case against Mr. Davis since he "was taken to a hospital" but "not tested for any drugs."  ROA.10.  The chief of police told Mr. Davis "on multiple occasions" that he had a policy of "believ[ing] and tak[ing] the word of his officers"—refusing to investigate further, reprimand his officers for fabricating evidence, or direct them to correct their testimony.  ROA.9. The officers' supervisors similarly did nothing, even though both had access to exculpatory "body and dashcam footage" contradicting the arresting officers' fabrication that Mr. Davis had ingested drugs. ROA.11–12.

Seven months after Mr. Davis's arrest (and negative drug tests), the district attorney's office initiated its prosecution.  Indeed, despite having *no physical evidence* that Mr. Davis ingested drugs during the traffic stop—and with access to his clean drug tests demonstrating the opposite—it procured an indictment against Mr. Davis (based on "fabricated evidence") for "tampering with physical evidence" by allegedly

eating a bag of crack cocaine, a third-degree felony in violation of Texas Penal Code § 37.09. ROA.11, 33, 42; *see also State v. Davis*, No. 241-1366-19, Indictment (Tex. Dist. Ct., Smith Cnty., Sept. 19, 2019) at 1.[2]

For almost five years those charges lingered. ROA.11, 34. During that time, a judicial order subjected Mr. Davis to regular drug testing at his own expense (to the tune of $100 per month). *See* ROA.15; *State v. Davis*, No. 241-1366-19, Conditions of Bond (Tex. Dist. Ct., Smith Cnty., Oct. 7, 2019) at 1. (placing Mr. Davis under conditions of pre-trial release, including weekly testing paid for by Mr. Davis, weekly reporting to the probation department, restrictions on alcohol consumption and firearm possession, and instructions that Mr. Davis remain in Smith County).[3]

---

[2] This Court "may take judicial notice of prior court proceedings as matters of public record." *In re Deepwater Horizon*, 934 F.3d 434, 440 (5th Cir. 2019); *see also Brown v. Lippard*, 350 F. App'x 879, 882 n.2 (5th Cir. 2009) (taking judicial notice of docket entry for case outside the record on appeal); Fed. R. Evid. 201. That's especially true where, as here, the criminal proceedings were referenced in and central to the complaint. *See Jones v. Adm'rs of Tulane Educ. Fund*, 51 F.4th 101, 111 (5th Cir. 2022).

[3] *See also State v. Davis*, No. 241-1366-19, Conditions of Bond (Tex. Dist. Ct., Smith Cnty., Dec. 5, 2019) at 1 (amending conditions to biweekly testing and reporting and allowing for some "travel for work"); *State v. Davis*, No. 114-0978-21, Conditions of Bond (Tex. Dist. Ct., Smith Cnty., July 23, 2021) at 1–2 (further revising conditions).

Three-and-a-half years into Mr. Davis's case, the district attorney's office tightened the screws. Although a third-degree felony like evidence tampering would ordinarily carry, at most, 10 years' imprisonment, *see* Tex. Penal Code §§ 12.34, 37.09, the district attorney's office sought to have Mr. Davis sentenced as a habitual offender, subjecting him to a possible life sentence, *see* ROA.11 (alleging that the district attorney "pursu[ed] a life sentence against [Mr. Davis] for an offense that he knew there was no evidence of happening"); ROA.58; *State v. Davis*, No. 114-0978-21, Notice to Seek Higher Punishment (Tex. Dist. Ct., Smith Cnty., Apr. 19, 2023) at 1–2.

Eventually, the district attorney's office made Mr. Davis an offer he couldn't refuse: it would dismiss the felony evidence-tampering charge if Mr. Davis would plead *nolo contendere* to a new misdemeanor charge of "interference with public duties" of a peace officer under Texas Penal Code § 38.15(a)(1). *See State v. Davis*, No. 114-0978-21, Plea Papers (Tex. Dist. Ct., Smith Cnty., May 13, 2024) at 1–9. Facing the prospect of a life sentence, Mr. Davis agreed. *Id.*

The district attorney's office dropped Mr. Davis's felony evidence-tampering charge on May 13, 2024. ROA.34, 44. The modified

10

indictment and the final judgment confirm that the felony charge was abandoned. ROA.42 (revised indictment replacing the felony evidence-tampering charge with a misdemeanor charge that Mr. Davis "interrupt[ed] a peace officer by walking two steps from the officer, while the officer was performing a duty granted by law, namely, conducting a consensual search of a vehicle"); ROA.44 (entering judgment of conviction on misdemeanor charge only). Mr. Davis, who had spent time in jail both post-arrest and post-indictment, was sentenced to time served on the misdemeanor charge. ROA.44.[4]

## II. The district court dismisses all claims as time barred.

On June 10, 2024—28 days after his charge for allegedly swallowing a bag of crack cocaine was dismissed—Mr. Davis brought a pro se civil-rights action in the Eastern District of Texas. ROA.5. Mr. Davis sued various city and county officials in their official and personal capacities under 42 U.S.C. § 1983, based on, for example, the fabrication of evidence, malicious prosecution, prosecution without probable cause, "unjust pretrial punishment," and the refusal of public officials to

---

[4] *See State v. Davis*, No. 114-0978-21, Article 17.19 Affidavit (Tex. Dist. Ct., Smith Cnty., Mar. 13, 2023).

intercede despite being informed of these constitutional violations. ROA.16 ("seek[ing] relief under the 4th Amendment, the 8th Amendment; and [the] 14th Amendment").

The district court referred the complaint to the magistrate judge, ROA.24, who screened it under 28 U.S.C. § 1915, ROA.25. The magistrate judge first narrowly construed Mr. Davis's complaint as alleging claims for malicious prosecution, excessive force, false arrest, and racial profiling. ROA.28. The judge then concluded that Mr. Davis's claims were time barred under Texas's two-year statute of limitations, because more than five years had passed since his arrest in February 2019. *See* ROA. 28–29 (explaining that state law supplies the limitation period in section-1983 actions). The magistrate judge thus ordered Mr. Davis to file an amended complaint. *See* ROA.30–31.

In response, Mr. Davis explained that he was initially indicted in 2019 for felony evidence tampering, but that the district attorney's office "dismissed the indictment against him" on that charge on May 13, 2024. ROA.34 (attaching amended indictment and judgment); *see also* ROA.42, 44. Only then was he permitted to bring claims for constitutional violations related to the dropped charge of felony evidence tampering—

such as for fabricating evidence, malicious prosecution, and unreasonable searches and seizures after his indictment.  ROA.34.

Even so, the magistrate judge recommended that Mr. Davis's claims "be dismissed without prejudice as barred by the statute of limitations."  ROA.51, 52 (citing 28 U.S.C. § 1915(e)(2)(B)(ii) (allowing dismissal of *in forma pauperis* complaints for failure state a claim)).  Mr. Davis objected, reiterating that his claims related to the charge of felony evidence tampering "are not time barred" because he filed his complaint "less than a month" after that charge was dismissed.  ROA.60.  Mr. Davis also asked the district court for appointed counsel.  ROA.63–64.

Without appointing counsel, the district dismissed *without* prejudice Mr. Davis's claims "related to his February 2019 arrest and subsequent prosecution" as "barred by the statute of limitations." ROA.70.  In reaching that decision, the district court concluded that *all* of Mr. Davis's claims accrued when he was indicted and that his "prosecution ended in a plea of *nolo contendere* and thus did not end in his favor."  ROA.66–68 (citing *Wallace v. Kato*, 549 U.S. 384, 397 (2007)).[5]

---

[5] Mr. Davis doesn't contest the dismissal of his claims related to excessive force and false arrest as time barred.

The district court also dismissed *with prejudice* Mr. Davis's claims that various city and county officials did nothing to rectify the ongoing constitutional violations against him despite being informed of them. ROA.68. It reasoned that these claims were time barred for the same reason as Mr. Davis's other claims and that Mr. Davis failed to plead sufficient factual content in any event. ROA.68.

Mr. Davis timely appealed. ROA.72. Although the magistrate judge denied Mr. Davis's motion for leave to proceed *in forma pauperis* on appeal, ROA.80–82, this Court—after reviewing Mr. Davis's pro se opening brief, *see* C.A. Dkt. 13, and concluding that it raised "at least one 'legal point arguable on the merits'"—granted the motion and appointed counsel, C.A. Dkt. 30-1 at 2 (internal alterations omitted). The Court also directed the Clerk's Office to notify the defendants of the pending action and establish a briefing schedule. *Id.*[6]

---

[6] Consistent with the procedure governing *in forma pauperis* pleadings, Consideration of whether Mr. Davis's complaint stated a claim for relief occurred before service on defendants. *See generally* 28 U.S.C. § 1915.

14

## SUMMARY OF THE ARGUMENT

Mr. Davis lived under threat of conviction and was subjected to onerous conditions of pretrial probation (at his own expense) for years. In contrast to the State's multiyear delay in dropping the baseless felony charge of tampering with evidence, Mr. Davis brought this civil-rights action within a month of the dismissal of that charge. The district court's dismissal of Mr. Davis's complaint in its entirety misapplies binding precedent and must be reversed.

I.    In evaluating the timeliness of Mr. Davis's complaint, the district court made two critical errors. *First*, the district court applied the same accrual rule across all claims, overlooking the Supreme Court's admonition that violations related to a formal charge don't accrue until that charge resolves in the plaintiff's favor. *McDonough* 588 U.S. at 116–17. So Mr. Davis's claims related to the charge of felony evidence tampering—like his claim for malicious prosecution—only accrued when that charge was dropped.

*Second*, the district court improperly held that the felony evidence-tampering charge wasn't terminated in Mr. Davis's favor "because his prosecution ended in a plea of *nolo contendere*." ROA.68. Supreme Court

15

precedent counsels that claims related to the initiation or furtherance of legal process must be analyzed on a *charge-by-charge* basis. *Chiaverini*, 602 U.S. 556, 563–64. And here the felony evidence-tampering charge was dismissed—i.e., favorably terminated.

Because Mr. Davis sued within a month of that dismissal, claims related to the felony evidence-tampering charge are timely.

**II.** This Court has long directed courts to construe pro se complaints liberally and to freely allow amendment. *Ricks*, 135 F.4th at 300–02; *see also Hitt*, 561 F.2d at 608–09. The district court violated both these directions in dismissing *with prejudice* Mr. Davis's claims against certain county and city officials for not taking actions to safeguard his constitutional rights. Liberally construed, Mr. Davis's pro se complaint alleged sufficient facts that these officials were aware of the ongoing constitutional violations. And even if it didn't, dismissal *without prejudice* was the appropriate result. *See Ricks*, 135 F.4th at 300–02. This Court should vacate the dismissal with prejudice accordingly.

## STANDARD OF REVIEW

"This court reviews dismissals based on section 1915(e)(2)(B)(ii) under the same de novo standard of review applicable to dismissals made pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999). In conducting this evaluation, the court must "accept all well-pleaded facts as true, construing all reasonable inferences in the light most favorable to the plaintiff." *Hernandez v. W. Tex. Treasures Est. Sales, L.L.C.*, 79 F.4th 464, 469 (5th Cir. 2023).

This Court will reverse where a plaintiff's complaint contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And because Mr. Davis proceeded pro se below, his pleadings are "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); *accord Ricks*, 135 F.4th at 300.

17

## ARGUMENT

### I.  Mr. Davis timely sued for constitutional violations related to his felony evidence-tampering charge.

The Supreme Court has been clear:  claims alleging constitutional violations related to a formal criminal charge don't accrue—and the limitations period doesn't begin to run—until "the underlying criminal proceedings" upon which the plaintiff's claim is based have "resolved in the plaintiff's favor."  *McDonough*, 588 U.S. at 116; *see also Manuel v. City of Joliet*, 580 U.S. 357, 367–69 (2017) (recognizing that fabrication of evidence can give rise to a "post-legal-process" constitutional claim). Because Congress didn't provide a limitations period for section-1983 actions, Texas's two-year limitations period applies.  *See Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018).  And any non-conviction qualifies as a favorable termination triggering that limitations period. *See McDonough*, 588 U.S. at 121; *Thompson*, 596 U.S. at 48–49; *Chiaverini*, 602 U.S. at 563–64.

So there's no question that Mr. Davis's claims related to the charge of felony evidence tampering are timely.[7]  After all, the district attorney's

_____

[7] The only post-legal-process claim that the district court affirmatively referenced was his claim for malicious prosecution, but other claims, like

18

office dropped the felony charge that Mr. Davis tampered with evidence on May 13, 2024. ROA.34, 42, 44. And a mere 28 days later, on June 10, 2024, Mr. Davis filed this suit. ROA.5.

The district court reached the opposite result only by (1) applying the accrual rules for challenges to constitutional violations arising *pre-institution* of legal process and (2) conflating the dismissed felony charge with the misdemeanor charge to which Mr. Davis pleaded *nolo contendere*. ROA.66–68. Neither move is permissible.

As an initial matter, different accrual rules apply depending on when a constitutional violation occurred. Claims like those for false imprisonment or false arrest attack constitutional violations "only to the extent [the violation occurred] *without* legal process" (for example, without a warrant or indictment). *McDonough*, 588 U.S. at 122 (emphasis added); *cf. Manuel*, 580 U.S. at 367–68. Those claims thus

---

for fabricating evidence and for searching and seizing Mr. Davis post-indictment without probable cause are discernible on the face of the complaint and, at the least, can be pleaded on remand. *See, e.g.*, ROA.11–13, 16; *Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020) ("Under our system of notice pleading, a complaint need not specify legal theories."), *abrogated on other grounds by Thompson*, 596 U.S. 36. That is consistent with the district court's dismissal without prejudice of the claims related to Mr. Davis's "subsequent prosecution." ROA.69.

accrue at the time of the violation. So the limitations period begins to run at the least by the time legal process is initiated—without reference to the result of any later criminal proceeding. *McDonough*, 588 U.S. at 121–22; *Wallace*, 549 U.S. at 388–91 & n.3.

In contrast, claims like those for fabricating evidence "to secure an indictment" or malicious prosecution relate to violations that occurred *with* "legal process." *McDonough*, 588 U.S. at 122. Those claims "directly challenge[]—and thus necessarily threaten[] to impugn—the prosecution itself." *Id.* Claims that would "necessarily imply" the invalidity of criminal proceedings don't accrue (and the limitations period doesn't begin) until that criminal proceeding terminates in the criminal defendant's favor. *Id.* at 119 (explaining that its decision was consistent with *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), which barred section-1983 claims related to the validity of a conviction until that conviction is invalidated).

The upshot is that the limitations period for Mr. Davis's claims related to the dropped charge of felony evidence tampering only began to run once the criminal proceedings on that charge *ended in his favor* on

20

May 13, 2024.  ROA.32, 42, 44.[8]

And contrary to the district court's opinion (at ROA.67–68), Mr. Davis's felony evidence-tampering charge *did* end in his favor.  To show favorable termination, a plaintiff need allege only that "the prosecution ended without conviction"—no "*affirmative* indication of innocence" is necessary.  *Thompson*, 596 U.S. at 46–48 (emphasis added).

Just so here.  As Mr. Davis alleged in his complaint and the public criminal record confirms, he wasn't convicted of felony evidence tampering.  ROA.32, 42, 44.  So that charge was favorably terminated. *See Thompson*, 596 U.S. at 40 (favorable termination where "the prosecution moved to dismiss the charges, and the trial judge in turn dismissed the case"); *Brandley v. Keeshan*, 64 F.3d 196, 199 (5th Cir. 1995) ("an order of dismissal reflecting an affirmative decision not to prosecute" is an "example[] of [favorable] termination"), *abrogated on other grounds by Wallace*, 549 U.S. 384.

---

[8] *Wallace*, on which the district court relied for its accrual analysis, isn't to the contrary.  *Wallace* addressed constitutional claims for false arrest *without* legal process—distinguishing claims following the initiation of legal process as "entirely distinct" and noting that the plaintiff there hadn't raised any claims related to his prosecution anyway.  549 U.S. at 390 & n.2.

The district court overlooked the lack of conviction on felony evidence tampering altogether and focused on Mr. Davis's *nolo contendere* plea to a *different* charge of misdemeanor interference with public duties. ROA.68. But the Supreme Court recently rejected aggregating charges in this manner, instead instructing courts to "evaluate suits like [Mr. Davis's] *charge by charge*." *Chiaverini*, 602 U.S. at 562 (emphasis added). That is, a plaintiff does "not have to show . . . that *every* charge brought against him lacked an adequate basis"— instead, "[o]ne bad charge, even if joined with good ones" can support a constitutional claim under section 1983. *Id.* at 563–64.[9]

That's true no matter how closely tied that charge is to the "good ones." Take, for example, the Third Circuit's decision in *Spone v. Reiss*, 2025 WL 670968, at *4–5 (3d Cir. Mar. 3, 2025). The prosecutor charged the plaintiff with three counts of "cyber harassment of a child" and three counts of ordinary harassment but dropped the cyber-harassment

---

[9] The district court's reliance on *Pete v. Metcalfe*, 8 F.3d 214, 219 (5th Cir. 1993), was misplaced. The *Pete* plaintiff pleaded *nolo contendere* to *all charges* against him, meaning all charges ended in conviction. *Id.* at 216. So to the extent that *Pete* suggested that charges dismissed under a plea bargain aren't favorably terminated, *id.* at 219 n.9, that language was *dicta* and pre-dated cases like *Thompson* and *Chiaverini* in any event.

22

charges on the first day of trial. *Id.* at *1–2. Although a jury convicted the plaintiff of ordinary harassment, the court held that her claim related to the cyber-harassment charges could proceed because those charges terminated in her favor. *Id.* at *2, *4. That was so even though the elements of cyber harassment and ordinary harassment substantially overlapped. *Id.*[10]

Favorable termination is thus a low bar—all that is required is the absence of a conviction on the underlying charge. The dismissal of the felony evidence-tampering charge easily clears that bar, so the Court should reverse the dismissal of Mr. Davis's claims related to that charge.

## II. This Court should reverse the dismissal with prejudice of Mr. Davis's other claims against city and county officials.

Pro se pleadings must be liberally construed, *Ricks*, 135 F.4th at 300–02, and claimants afforded "every opportunity to state a claim," *Hitt*, 561 F.2d at 608. Those principles warrant reversal of the district court's

---

[10] *Accord Gervin v. Florence*, 139 F.4th 1236, 1249 (11th Cir. 2025) ("To satisfy the favorable-termination requirement, a plaintiff must show only that the 'proceedings against' him 'formally end[ed] in a manner not inconsistent with his innocence on at least one charge that authorized his confinement.'") (quoting *Laskar v. Hurd*, 972 F.3d 1278, 1293 (11th Cir. 2020)).

dismissal *with prejudice* of Mr. Davis's claims "related to his ongoing complaints to city and county officials." ROA.68–69. Mr. Davis should be afforded the opportunity, with the benefit of counsel, to replead.

To start, the district court dismissed these claims in part based on the limitations period. ROA.68. But for the reasons described, any claim related to the dropped charge of felony evidence tampering is timely. So dismissal with prejudice cannot be sustained on that basis.

The district court next justified dismissal with prejudice on the basis that Mr. Davis didn't sufficiently allege that these officials were "on notice that his constitutional rights were being violated." ROA.68. But Mr. Davis alleged that that he discussed these issues *repeatedly* with those defendants, informing them that he had been "falsely accused of eating crack cocaine" and "being racially profiled," and that the police refused to test him for drugs or offer him medical treatment. ROA.8–15, 37, 59–61. That's more than enough to support that these officials were "on notice." *See Ricks*, 135 F.4th at 301–02 (liberally construing pro se complaint as stating a claim for deliberate indifference through mere allegation that a medical treatment was "universally accepted" to be the

24

right one for his health issue). In any event, these allegations can be enhanced in an amended complaint.

Similarly, the dismissal with prejudice of allegations concerning racial profiling can be clarified on remand. For example, should this Court vacate the dismissal with prejudice, Mr. Davis could expand on his allegations that the officers' fabrication of evidence fit within a broader pattern of racial profiling by the Tyler Police Department and thus violated his rights under the Equal Protection Clause. ROA.37, 60; *see* Eric Dexheimer, *Police Searching His Car for Drugs Found Nothing. He Could Still End Up In Prison for a Decade*, Houston Chronicle, Apr. 19, 2023.[11]

In sum, "[i]n screening *pro se* actions, it is incumbent upon the [district] court to develop the case and to sift the claims and known facts thoroughly until completely satisfied either of its merit or lack of same." *Lowrey v. Collin Cnty. Sheriff's Dep't*, 15 F.3d 1078, 1994 WL 35601, at

---

[11] Available at https://www.houstonchronicle.com/politics/texas/article/ police-search-finds-nothing-texas-parolee-still-17888197.php. Further, in preparation for his criminal trial, Mr. Davis hired an expert to analyze the department's pattern of racial discrimination. ROA.35 (referencing expert report). That factual support, for example, could be further incorporated into an amended complaint on remand.

*2 (5th Cir. 1994) (internal quotation marks omitted) (suggesting district courts hold a hearing with the pro se petitioner or request completion of a questionnaire).[12]  That didn't happen here.

Mr. Davis thus respectfully asks this Court to vacate the dismissal with prejudice and allow him the opportunity to move forward with (or at minimum replead) his case with the benefit of counsel.  *See Ricks*, 135 F.4th at 303.

*   *   *

For almost five years, Mr. Davis was subjected to intrusive pre-trial supervision, the threat of criminal conviction, and (at times) detention *based on a single charge*:  felony evidence tampering.  The time is finally ripe for Mr. Davis to sue for the myriad violations of his constitutional rights related to that abandoned charge.

---

[12] *Accord Olstad v. Collier*, 205 F. App'x 308, 311 (5th Cir. 2006) ("This court has encouraged the district courts to flesh out the conclusory statements in pro se pleadings, using interrogatories as well as evidentiary hearings to do so.").

## CONCLUSION

For the above reasons, the Court should vacate and remand for further proceedings.

Dated:   July 25, 2025

Alec F. Mouser
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  22306
Telephone: (202) 777-9334
Facsimile:  (202) 530-9655
*amouser@gibsondunn.com*

Respectfully submitted,

 */s/ Elizabeth A. Kiernan*
Allyson N. Ho
Elizabeth A. Kiernan
   *Counsel of Record*
Arjun Ogale
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
Telephone: (214) 698-3100
Facsimile:  (214) 571-2900
*ekiernan@gibsondunn.com*
*aho@gibsondunn.com*
*aogale@gibsondunn.com*

COUNSEL FOR APPELLANT DARYL L. DAVIS

27

**CERTIFICATE OF SERVICE**

I certify that, on July 25, 2025, a true and correct copy of the foregoing brief was served electronically using the Court's CM/ECF system on all parties for whom counsel has appeared, including Defendants-Appellees Don Warren, Shirley McKellar, Deborah Pullum, Jimmy Tolar, James Goodman, Timothy Hutson, Garrett Martin, Blake Kelly, Kris Davis, E.B. Johnson, and J. Rackliff.

I also certify that, on July 25, 2025, I caused a true and correct copy of the foregoing brief to be served via commercial carrier to the following parties, for whom counsel have not appeared, at their respective addresses:

Larry Smith
227 N. Spring Avenue
Tyler, TX 75702

Ralph Caraway, Sr.
200 E. Ferguson Street
Tyler, TX 75702

Neal Franklin
200 E. Ferguson Street
Tyler, TX 75702

JoAnn Hampton
200 E. Ferguson Street
Tyler, TX 75702

Jacob Putman
100 N. Broadway Avenue
Tyler, TX 75702

/s/ *Elizabeth A. Kiernan*
Elizabeth A. Kiernan

28

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because it was prepared in 14-point New Century Schoolbook, a proportionally spaced typeface, using Microsoft Word for Microsoft 365. This brief complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains 4,809 words, excluding the parts exempted by Rule 32(f).

I certify that: (1) any required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission of this document is an exact copy of any corresponding paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus-scanning program and is free of viruses.

/s/ *Elizabeth A. Kiernan*
Elizabeth A. Kiernan